ORIGINAL

FILED

FEB 11 2014

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT
## OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| Lukos-VATC JV LLC | ) | |
| 5813 S MacDill Ave | ) | |
| Tampa, FL. 33611 | ) | |
| Plaintiff, | ) | |
| | ) | |
| - v - | ) | No.: |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Lukos-VATC JV LLC ("LVJV") commences this action against Defendant United States of America and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief against the defendant. Specifically, plaintiff wants to preliminarily and permanently enjoin the U.S. Special Operations Command ("SOCOM") from awarding a contract to any entity other than LVJV under Solicitation No. H92222-13-R-0013 (the "Solicitation"). Plaintiff also wants a declaration that the Small Business Administration's ("SBA") Office of Hearings and Appeals ("OHA") decision, finding LVJV to be other than small, was arbitrary, capricious, irrational, and contrary to law.

### PARTIES

2.      The plaintiff LVJV, is a joint venture duly organized in Florida, with its principal place of business in Tampa, Florida, comprised of two active participants in the SBA's 8(a)

1

Business Development Program ("8(a) Program"): Lukos, LLC ("Lukos") and Visual Awareness

Technologies and Consulting, Inc. ("VATC").

> 3.     The defendant United States of America, acting by and through SOCOM, 7701

Tampa Point Blvd., MacDill Air Force Base, FL 33621, is a Department of Defense agency.

## JURISDICTION

> 4.     LVJV submitted a proposal and was the apparent successful offeror under the

Solicitation. Consequently, LVJV is an interested party because it has been adversely affected by

the decision of OHA that it is other than a small business, which made it ineligible for the award.

> 5.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1491(b)(1).

## FACTUAL BACKGROUND

### The Mentor-Protégé Agreement, JV Agreement, and Proposal

> 6.     In March 2013, Lukos and VATC executed a mentor-protégé agreement ("MPA").

> 7.     The MPA, together with certain supporting documentation requested by the SBA,

was received by the SBA's Miami District Office on March 18, 2013.

> 8.     On April 10, 2013, the SBA informed Lukos and VATC that the MPA was in the

recommendation stage and "will be sent to DC once the required signatures had been received."

> 9.     In April 2013, Lukos and VATC formed LVJV as an unpopulated joint venture.

The parties executed a joint venture agreement ("JVA") complying with all required elements of

13 C.F.R. § 124.513.   LVJV submitted its JVA, along with supplementary documentation, to the

SBA for approval on April 16, 2013.

> 10.     On May 16th, while the SBA was processing the MPA and JVA, SOCOM released

2

the Solicitation.

11.    The Solicitation called for the successful offeror to provide Special Operations Forces exercise and collective training subject matter experts across a variety of activities.

12.    The Solicitation was a 100% 8(a) set-aside and was designated with North American Industry Classification System ("NAICS") code 541990, with a corresponding $14 million size standard.  Proposals were due June 17th.

13.    Because time was very short, LVJV immediately informed the SBA's Miami District Office that LVJV intended to submit a proposal under the Solicitation and that time was of the essence in ensuring LVJV's ability to do so.

14.    LVJV contacted the Miami Office nearly every business day to check on the status of the MPA and reiterate the need for prompt action.

15.    Telephone records demonstrate that between May 16th and June 10th, Mr. Arevalo spoke 17 times with the Miami District Office.

16.    During the same timeframe, Mr. Arevalo exchanged 15 emails with the Miami District Office.  Other LVJV representatives also contacted the Miami District Office to stress the importance of prompt processing of the MPA.

17.    On June 3rd, the Miami SBA office told Mr. Arevalo that the MPA had been forwarded to Washington, D.C. for final review.

18.    On June 7th, Lukos and VATC decided that if they were not notified of MPA approval in the coming days, they would submit an offer with Lukos as the prime contractor and VATC as a major subcontractor, rather than submitting an offer as a joint venture.

3

19.     On June 10th, LVJV's designated 8(a) SBA Business Opportunity Specialist ("BOS") notified Mr. Arevalo via telephone that the MPA had been approved by SBA headquarters in Washington, DC.

20.     In that call, Mr. Arevalo asked for a copy of the approval letter, but was told that formal approval letters were not issued.

21.     Instead, Mr. Arevalo was informed that SBA headquarters simply logs records of mentor-protégé approvals in its files.

22.     Despite the absence of any formal approval letter, the SBA's June 10th call was clear and unequivocal: the SBA had approved the mentor-protégé agreement.

23.     Based on the SBA's notification, on June 17, 2013, LVJV submitted its proposal under the Solicitation.

24.     On June 26th, LVJV received an email from the SBA stating that the JVA had been approved for the Solicitation.

### Confirmation of Eligibility and the Notification of Award

25.     After evaluating competitive proposals, SOCOM determined that LVJV's proposal was ranked highest of all offers submitted under the technical, management and past performance factors, as well as the lowest-priced offer.  Thus, LVJV's proposal presented the best overall value to the Government.

26.     In accordance with Federal Acquisition Regulation ("FAR") 19.806 and 13 C.F.R. § 124.507(b), SOCOM contacted the SBA's Miami District Office to determine LVJV's eligibility for award.

4

27.     On September 18, 2013, the SBA issued a letter to SOCOM entitled "Determination of Eligibility."   The letter stated that LVJV had been deemed eligible for award of the contract under the Solicitation.

28.     After receiving the SBA's confirmation of eligibility, SOCOM notified LVJV that it was the apparent successful offeror.

### The Size Protest

29.     ITA International, LLC ("ITA") filed its protest on September 30, 2013, alleging that "[t]he Lukos-VATC JV LLC joint venture is an affiliation of Lukos and VATC."

30.     In support of its allegation, ITA attached printouts from the websites of LVJV's members.   The printouts from each firm's website are identical and announced the approval of the MPA and JVA.   Although the printouts are dated July 25, they indicate that the approvals occurred at an unnamed earlier date.

31.     ITA did not provide any additional evidence or information supporting its allegation that LVJV does not qualify for the mentor-protégé exception from affiliation.

32.     Rather, ITA concluded that "Lukos-VATC JV, LLC is not a qualified 8(a) SBC and is ineligible to receive award under this procurement."

### LVJV's Response and SBA's Associate Administrator for Business Development Letter

33.     In LVJV's timely submitted a response to the size protest LVJV first argued that the protest should be dismissed because ITA failed to meet the specificity requirement under 13 C.F.R. § 121.1007(b).

34.     Second, LVJV argued that even if the protest was found to meet the specificity

5

requirements, the Area Office lacked jurisdiction to find the joint venture ineligible for award of the 8(a) set-aside contract contemplated by the Solicitation.

35.      Third, LVJV argued that the MPA had been approved before LVJV submitted its offer, but that "even if the MPA had not been approved, the SBA would be prohibited from penalizing LVJV for its reasonable reliance on the SBA's multiple approvals."

36.      On October 25, 2013, the SBA's Associate Administrator for Business Development ("AA/BD") issued letter stating that the MPA had been "ultimately approved" on June 19th.

37.      That same day, LVJV submitted a supplement to its size protest response, disputing the June 19th date and arguing that the District Office has exclusive authority over reviewing and approving 8(a) joint ventures.

### The Area Office Size Determination

38.      The Area Office issued the Size Determination, dated November 1, 2013, on November 4, 2013.

39.      The Size Determination completely ignored the entirety of LVJV's response to the size protest.

40.      The Area Office did not explain why ITA's size protest met the specificity requirement under 13 C.F.R. § 121.1007(b).  In fact, the word "specificity" does not even appear in the Size Determination.

41.      The Area Office also ignored the question of its authority to reach the Size Determination.

6

42.     Additionally, the Area Office failed to address the effect of the June 10th SBA notification and LVJV's argument that the SBA was equitably estopped from penalizing LVJV for its reasonable reliance on that notification.

43.     Accepting without question or discussion of the June 19th approval date, the Area Office wrote that at the time of proposal submission, "Lukos and VATC's mentor-protégé agreement had not been approved, and thus the mentor-protégé relationship did not yet exist."

44.     The Area Office found that Lukos and VATC were affiliated for purposes of the Solicitation, and that the resulting affiliation rendered LVJV ineligible for award because it was other than small.

## SBA's Office of Hearings and Appeals Decision

45.     LVJV timely appealed the Area Office's decision to the SBA's Office of Hearings and Appeals ("OHA") on December 2, 2013.

46.     On December 20, 2013, the SBA was served with a Request for Agency Comments ("Agency Comments"), which the SBA filed with OHA on January 16, 2014.

47.     On January 24, 2014, LVJV filed its response to the Agency Comments with OHA.

48.     On February 6, 2014., OHA issued its decision ("OHA Decision"), affirming the Area Office's size determination and denying LVJV's appeal.

49.     OHA found that the record was clear that the AA/BDE did not approve LVJV's mentor-protégé agreement until June 19th, two days after LVJV had submitted its offer in response to the Solicitation on June 17th, thereby making LVJV ineligible for the mentor-protégé affiliation exception.

50.     OHA ruled that the BOS's statement to Mr. Arevalo did not change this fact

because it is the AA/BD, not the BOS, who has the authority to approve mentor protégé agreements.

51.   OHA stated that LVJV's argument that SBA should be estopped from applying its regulations surrounding the mentor-protégé exception to affiliation failed because it was incomplete.

52.   According to OHA, equitable estoppel against the Government requires a showing of affirmative misconduct, and "affirmative misconduct requires intentional behavior", meaning "the actor must know he is acting wrongfully."

53.   OHA also rejected LVJV's argument that it rely on equitable principles of fairness to find an earlier date of approval for the mentor-protégé agreement because it thought that the relevant case law does not support such a finding.

54.   Finally, OHA found that LVJV's argument that the Area Office had no jurisdiction to decide the size protest lacked merit.

## COUNT ONE – PROTEST FAILED TO MEET SPECIFICITY REQUIREMENT

55.   LVJV realleges paragraphs 1-54 as if set forth fully herein.

56.   The protest should be dismissed because ITA fails to meet the specificity requirement set forth in 13 C.F.R. § 121.1007(b).

57.   Instead of providing any evidence supporting its allegation, ITA relies entirely on a mischaracterization of the press releases attached to its protest.

58.   The SBA's size protest regulations require that a size protest "include specific facts." 13 C.F.R. § 121.1007(b).

59.   ITA's protest should have been dismissed since it did "not contain sufficient

specificity will be dismissed by SBA."   13 C.F.R. § 121.1007(c).

### COUNT TWO – SBA DID TIMELY APPROVE MPA

60.     LVJV realleges paragraphs 1-59 as if set forth fully herein.

61.     Even if the protest is considered specific, it should be denied because the MPA was approved before LVJV submitted its proposal.

62.     Further, even if the MPA had not been approved, the SBA would be prohibited from penalizing LVJV for its reasonable reliance on the SBA's multiple approvals.

63.     The 8(a) regulation at issue in the protest provides that "SBA must approve the mentor/protégé agreement before the two firms may submit an offer as a joint venture on a particular government prime contract or subcontract in order for the joint venture to receive the exclusion from affiliation."   13 C.F.R. § 124.520(d)(1)(i).

64.     In this case, LVJV received notice on June 4, 2013 that its MPA had been forwarded from the Miami District Office to the Washington, DC office for final review.

65.     On June 10, 2013, LVJV was informed that the MPA had been approved.

66.     In reliance on the notification of approval, LVJV submitted its offer as a joint venture (instead of as a prime/subcontractor team, which would not have required MPA approval).

67.     On June 26, the SBA approved the JVA; the SBA approved the joint venture for award under the Solicitation again in September.

68.     Those approvals could not have occurred without a valid MPA.

69.     Thus, at every step of the process, the Office of Business Development, both by word and by deed, indicated that the MPA had been approved prior to June 17, 2013.

### COUNT THREE – AREA OFFICE LACKS JURISDICTION

70.    LVJV realleges paragraphs 1-72 as if set forth fully herein.

71.    Even if the ITA's protest is considered specific, it should have been dismissed because the Area Office lacks jurisdiction to second-guess the determination that LVJV is an eligible 8(a) mentor-protégé joint venture.

72.    Rather, this is a matter reserved exclusively for the SBA's Office of Business Development, which has determined that LVJV is eligible for award of this 8(a) set-aside contract.

## COUNT FOUR – SBA IS EQUITABLY ESTOPPED

73.    LVJV realleges paragraphs 1-72 as if set forth fully herein.

74.    Further, even if the Office of Business Development were belatedly to question whether the MPA had been approved by June 17th, it would be improper for the SBA to hold that LVJV is not a small business.

75.    Under the doctrine of "equitable estoppel," an agency can be prohibited from taking adverse action against a contractor if four factors are met: (1) the agency knows the true facts; (2) the agency intends or expects that its statements will be relied upon; (3) the contractor is ignorant of the true facts; and (4) the contractor relies on the agency's conduct to its injury.

76.    In this case, LVJV submitted its proposal as a joint venture in reasonable reliance on the SBA's express statement that the MPA had been approved on June 10th and all of the elements of equitable estoppels are present.

77.    As of June 10, only the SBA knew the true fact of whether the MPA had been approved.

78.    By informing LVJV of the approval, the SBA should have known and expected that

LVJV would rely on the SBA's statement to submit an offer as a joint venture.

79.    To the extent the MPA had not been approved, LVJV was not aware of the true facts, and had no basis to disbelieve the SBA's statement.

80.    Should LVJV be found "other than small" as a result of its reliance on the SBA's express statement, it would certainly cause injury to LVJV.

81.    Accordingly, in order to "avoid injustice," the SBA should not be permitted to contradict the Office of Business Development's June 10 notification and two subsequent eligibility determinations.

## COUNT FIVE – INJUNCTIVE RELIEF

82.    LVJV realleges paragraphs 1-81. as if set forth fully herein.

83.    LVJV has a strong likelihood of success on the merits in this action.

84.    OHA violated the procurement statutes and regulations and acted in an arbitrary and capricious manner when it determined the Lukos and VATC were affiliated for purposes of the Solicitation, and that LVJV was other than small, thus rendering LVJV ineligible for award.

85.    As a result of OHA's unlawful actions, LVJV will suffer irreparable injury for which it has no adequate legal remedy. This injury will include loss of the opportunity to compete for and perform work required under the Solicitation, as well as the loss of the good will, past performance record, and other opportunities to compete for and perform work under similar solicitations in the future. Ultimately, LVJV will suffer the loss of significant revenues and profits and the possible loss of employees.

86.    LVJV's requested relief will not injure SOCOM as the Agency has no immediate needs under the Solicitation. SOCOM's letter, dated November 18, 2013, stated that it had not yet

terminated LVJV's contract and continued the acquisition with the remaining offerors, and in fact would not do so until OHA ruled against LVJV.

87.     The relief that LVJV requests will ensure that OHA protects the public interest by preserving the integrity of and the public confidence in the federal acquisition process, thereby preserving and promoting competition for federal contracts.

88.     A preliminary injunction, followed by a permanent injunctive relief, is appropriate and necessary to prevent imminent and irreparable harm to LVJV, and to enforce LVJV's legal rights.

## **REQUEST FOR RELIEF**

WHEREFORE, LVJV respectfully requests the Court to enter judgment in its favor and against defendant as follows:

a.     Declare that OHA has violated the law and acted arbitrarily and capriciously in finding LVJV to be other than small;

b.     Enter a preliminary injunction, followed by a permanent injunction, to require the Government to enjoin the award of a contract under the Solicitation to any party other than LVJV until this proceeding is complete;

c.     Declaratory relief stating that LVJV is small under the Solicitation, eligible to compete on the Solicitation, and thus entitled to award of the contract under the Solicitation;

d.     Award LVJV its costs and attorney's fees in this action as allowed by law; and

e.     Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

12

John R. Tolle (Counsel of Record)
BARTON, BAKER, THOMAS & TOLLE, LLP
1320 Old Chain Bridge Road, Suite 440
McLean, Virginia 22101
(703) 448-1810 - Telephone
(703) 448-3336 – Facsimile
jtolle@bbttlaw.com - Email

Date: February 11, 2014

13

## VERIFICATION

I, Garth Arevalo, Chief Executive Officer of Lukos, manager of the MPA approval process for Lukos and the lead person for all LVJV communications with the SBA during all relevant times hereto, state: I am familiar with the facts relating to the foregoing Verified Complaint for Injunctive and Declaratory Relief. I have read the foregoing Verified Complaint for Injunctive and Declaratory Relief and know the contents thereof. I have either first-hand knowledge or a reasonable basis for information and belief for each of the facts stated herein. Of the facts stated for which I have first-hand knowledge, I believe them to be true, and of the facts stated on information and belief, I have a reasonable basis to believe them to be true. The documents appended as exhibits to the Verified Complaint for Injunctive and Declaratory Relief are true and accurate copies of the original documents to the best of my belief and knowledge.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on February 8, 2014.

By:

Digitally signed by
Garth J. Arevalo
Date: 2014.02.08
13:27:03 -05'00'

Garth Arevalo

14