# In the United States Court of Federal Claims

No. 14-122C
(Filed: May 12, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **LUKOS VATC JV LLC,** | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES,** | * |
| Defendant, | * |
| and | * |
| **ITA INTERNATIONAL, LLC,** | * |
| Intervenor-Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

This is a bid protest action. Basically, the issue in this case is whether LVJV was qualified as a small business under the Small Business Administration's 8(a) Business Development Program in time to submit a proposal on a procurement issued by United States Special Operations Command ("SOCOM") that has a 100% set-aside for 8(a) Program participants. The case is now before the Court on cross-motions for judgment on the administrative record. For the reasons that follow, LVJV's motion for judgment on the administrative record is DENIED, the Government's cross-motion is GRANTED, and ITA's cross-motion is DENIED, as moot.

I.  **Background**

a.  **Regulatory Framework**

The Small Business Act (the "Act") authorizes the Small Business Administration ("SBA") to establish "detailed definitions or standards by which a business concern may be determined to be a small business concern for the purpose of this Act or any other Act." 15 U.S.C. § 632(a)(2)(A). The Act also authorizes SBA to issue regulations related to the Act. 15 U.S.C. §634(b)(6).

SBA's small business size standards are found in 13 C.F.R. Part 121. Pursuant to Part 121, the SBA uses the North American Industry Classification System ("NAICS") to

1

establish size standards, which are either limited by number of employees or annual receipts. 13 C.F.R. § 121.201. A business concern that wishes to bid on a contract that has been set aside for small business participation must meet the NAICS size standard specified in the solicitation.

While a concern's size is usually determined based upon the aggregate number of employees or value of receipts, 13 C.F.R. §121.103(h)(2), there are several exceptions to this general rule. One of these exceptions arises under the SBA's 8(a) Business Development program, which allows a participant to form a joint venture with a mentor concern under the SBA's Mentor-Protégé Program:

> Two firms approved by the SBA to be a mentor and protégé under § 124.520 of these regulations may joint venture as a small business for any Federal government prime contract or subcontract, provided the protégé qualifies as small for the size standard corresponding to the NAICS code assigned to the procurement and, for purposes of 8(a) sole source requirements, has not reached the dollar limit set forth in § 124.519 of these regulations. If the procurement is to be awarded other than through the 8(a) BD Program, SBA must approve the joint venture pursuant to § 124.513. If the procurement is to be awarded other than through the 8(a) BD program (e.g., small business set aside, HUBZone set aside), SBA need not approve the joint venture prior to award, but if the size status of the joint venture is protested, the provisions of §§ 124.513(c) and (d) will apply. This means that the joint venture must meet the requirements of §§ 124.513(c) and (d) in order to receive the exception to affiliation authorized by this paragraph. In either case, after contract performance is complete, the 8(a) partner to the joint venture must submit a report to its servicing SBA district office explaining how the applicable performance of work requirements were met for the contract.

13 C.F.R. § 121.103(h )(3)(iii). A joint venture seeking to take advantage of this exception must apply for approval of its mentor-protégé agreement ("MPA").

Part of the dispute in this case lies with who has authority to make this approval. The parties are in agreement, however, as to the general procedure. The business seeking approval first submits its MPA to the Business Opportunity Specialist ("BOS") in the protégé's SBA District Office. The BOS prepares a recommendation for the Assistant District Director for the 8(a) Business Development Program ("ADD"). If the ADD does not approve the MPA, both parties are notified. If the ADD approves, the recommendation is forwarded to the District Director ("Director"). If the Director agrees, the MPA is forwarded to Washington, DC, where the MPA goes through several additional layers of approval. If the MPA is finally approved, the mentor, protégé and district office are informed.

### b. Factual Background

LVJV is a joint venture comprised of Lukos, LLC ("Lukos") and Visual Awareness Technologies and Consulting, Inc. ("VATC"). Both are participants in the 8(a) Program. In March of 2013, Lukos and VATC executed a mentor-protégé agreement ("MPA") which was submitted to the SBA's Miami District Office for approval and admission into the 8(a) Program. On March 26, 2013, the assigned BOS informed Lukos that he had approved the MPA and forwarded his recommendation of approval. The MPA began to work its way up the chain at SBA. In April of 2013, Lukos and VATC formed the unpopulated joint venture, LVJV.

On May 16, 2013, while the MPA was still being processed, SOCOM issued solicitation number H92222-13-R-0013 (the "Solicitation"), which stated an NAICS code of 541990, which has a size standard of $14 million. The procurement was a 100% set-aside for 8(a) Program participants. The deadline for responses to the Solicitation was June 17, 2013.

In response to the Solicitation, LVJV informed the SBA that it intended to submit a proposal and that time was of the essence. On June 3, 2013, LVJV was informed that the MPA had been forwarded to Washington, DC for final review. On June 7, Lukos and VATC decided that if they did not obtain approval in time for the Solicitation's deadline, as an alternative, they would submit a proposal naming Lukos as the prime contractor and VATC as a major subcontractor. On June 10, however, the BOS called LVJV and, during the conversation, informed LVJV that its MPA had been approved and that no official approval letters were issued, but that the MPA was awaiting a final signature from an SBA official who was on vacation until after June 17. But on June 14, Garth Arevalo, the CEO of Lukos, was informed by telephone "that there may have been a misunderstanding about the MPA approval in DC." AR Tab 18 at 189.

Despite the absence of the final signature and the disturbing telephone call of June 14, LVJV opted to submit its proposal as an 8(a) Program based on the representations made by the BOS on the June 10 phone call. It appears from Mr. Arevalo's statements that this was done because there was not time to prepare an alternate bid and with the hope that approval would come by June 17. AR Tab 18 at 189. But formal approval did not come until June 19, 2013, when the Associate Administrator, Office of Business Development ("AA/BD") issued an internal memo stating that the MPA had been approved.

Meanwhile, SOCOM determined that LVJV's proposal ranked highest among all offers under technical, management and past performance categories. In addition, it was the lowest-priced offer. In accord with Federal Acquisition Regulation ("FAR") 19.806 and 13 C.F.R. § 124.507(b), SOCOM contacted the SBA's local District Office to determine LVJV's eligibility for the award. On September 18, 2013, the SBA issued a letter to SOCOM indicating that it had determined that Lukos and VATC were eligible.

On September 25, 2013, the unsuccessful offerors were notified by email that the procurement had been awarded to LVJV. At this point, Intervenor-Defendant ITA International, LLC ("ITA") instituted a protest with the SBA Area Office in Atlanta, wherein it argued that LVJV did not meet the size requirements listed in the Solicitation. The Area Office determined that LVJV's MPA was not approved until June 19, 2013, two days after the Solicitation closed. As such, the Area Office determined that Lukos and VATC were merely affiliated for purposes of the Solicitation, which finding rendered them ineligible to receive the contract.

LVJV appealed the Area Office's determination to SBA's Office of Hearings and Appeals ("OHA"). OHA affirmed the Area Office's determination, finding that the MPA was not approved until June 19, with the result that LVJV was not eligible to receive an award under the Solicitation until after the Solicitation closed. OHA ruled that the BOS's statements on June 10 regarding approval were irrelevant because it is the AA/BD and not the BOS who has authority to approve MPAs.

### c. Procedural Background

After losing its appeal at OHA, LVJV instituted a bid protest action in this Court on February 11, 2014. The parties began briefing the pending motions in March of 2014, at which time a dispute arose over ITA's motion to supplement the Administrative Record ("AR"). Portions of ITA's cross-motion for judgment on the AR relied upon the proposed supplementary information. The Court convened a status conference on March 26, 2014 to discuss the motion to supplement.

During the discussion, the parties informed the Court of certain facts not directly relevant to the pending protest. Essentially, ITA was concerned that if the Court granted all the remedies requested by LVJV, the Court's ruling would interfere with certain corrective action agreed to in a parallel GAO protest instituted by ITA. The Court assured ITA that it would take that corrective action into account in tailoring its order if it determined that LVJV was entitled to judgment, but that it otherwise considered the GAO protest to be beyond the scope of LVJV's protest at this Court. Based on the Court's assurances, ITA withdrew its motion to supplement the AR during the conference.

Briefing on the pending cross-motions for judgment on the AR was completed on March 28, 2014. The Court now turns to the issues raised in the briefing and properly before it. Obviously, this opinion does not discuss any of ITA's additional arguments based on the GAO protest, because these arguments exceed the scope of the dispute before this Court.

## II. Standard of Review

### a. Standard of Review for Judgment Upon the Administrative Record

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), this Court reviews an agency's procurement decision on the basis of the existing AR. Rule

52.1 essentially provides a procedure for "trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Instead, "the focal point for judicial review should be the administrative record already in existence, not some record made initially by the reviewing court." *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1380 ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to convert the 'arbitrary and capricious' standard into effectively de novo review.") (internal quotations, citations omitted).

### b. Standard of Review for Procurement Challenges

This Court maintains jurisdiction over bid protests pursuant to the Tucker Act. 28 U.S.C. § 1491(b)(1). The Tucker Act requires the Court to "review the agency's decision pursuant to the standards set forth in" the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). *See* 28 U.S.C. § 1491(b)(4). Under the APA, an agency action may be found unlawful if that action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marina (Asia), PTE Ltd. V. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). Under this standard, a procurement decision may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

### III. Discussion

LVJV's brief raises four arguments as to why the Court should find that it was eligible for the award. First, it argues that the MPA was legally approved by the various layers of SBA actions prior to final approval by the AA/BD. Second, it argues that the AA/BD's final approval on June 19 serves as ratification of the BOS's June 10 statement. Third, it argues that principles of equitable estoppel render LVJV eligible for the award. Fourth, it argues that general principles of equity require the Court to find it eligible for the award. Finally, LVJV argues that it is entitled to injunctive relief. These arguments are joined by both the Government and ITA, but ITA adds a further assertion that LVJV has failed to establish this Court's jurisdiction. The Court will, therefore, look first to the jurisdictional dispute and then address LVJV's substantive arguments.

### a. This Court Possesses Jurisdiction Over the Action

ITA argues that the Court lacks jurisdiction over LVJV's argument. In making its argument, ITA argues that the judge in *Red River Service Corp. v. United States*, 60 Fed.Cl. 532 (2004), found that the Court of Federal Claims lacks jurisdiction over SBA decisions. Notably, the Government did not challenge the Court's jurisdiction in either of its briefs. LVJV counters ITA's argument by citation, without explanation or substantive discussion, to *Metters Industries, Inc. v. United States*, 109 Fed.Cl. 444 (2013), and *LB & B Associates, Inc. v. United States*, 68 Fed.Cl. 765 (2005).

In *Red River*, the Court was faced with a situation only facially similar to the one now before the Court.  Digging into the decision, however, it is clear that *Red River* is inapposite to the case now pending.  The Air Force, the procuring agency in *Red River*, assigned a particular NAICS code which set a size standard of $21 million, and Red River requested that the SBA direct the Air Force contracting officer to re-designate the NAICS code.  *Red River*, 60 Fed.Cl. at 534.  The challenge was to the specific size standard called for in the solicitation, and not to any decision as to whether Red River was qualified to submit a proposal under the size standard set forth in the solicitation.  That is not what LVJV requests in this action, and such a remedy would require the Court of Federal Claims to second-guess an Agency's own procurement officials' determinations of the requirements of the procurement itself.

The two cases relied upon by LVJV are likewise not directly on point.  Not only does the *Metters* opinion not discuss jurisdiction, it does not even include the word "jurisdiction."  It is, however, similar to this case in that the plaintiff there was determined to be the "apparent awardee," but the agency requested a formal size determination which resulted in a determination that the plaintiff did not meet the size requirements specified in the solicitation, *see Metters*, 109 Fed.Cl. at 446, much like SOCOM's request here.  Still, the Court evidently exercised jurisdiction because it ruled on the substantive dispute before it.

*LB & B* presents a similar situation.  In that case, the plaintiff's initial offer on a solicitation included a certification of small business status.  *LB & B*, 68 Fed.Cl. at 767.  The solicitation was an indefinite delivery/indefinite quantity contract which called for individual task/delivery orders.  *Id.*  After receiving the plaintiff's offer, the agency awarded two task orders to the plaintiff, neither of which required re-certification of small business status.  *Id.*  Then, the agency issued another request for proposals on a task order under the contract and requested that the offerors re-certify their status.  Of the three approved offerors, two re-certified and the plaintiff relied upon its earlier certification.  There was evidence that the plaintiff was no longer small, so the procuring agency instituted a protest at the SBA.  It was the final SBA determination in this protest which the plaintiff brought to the Court of Federal Claims and, again, the court exercised jurisdiction.  *See id.* at 769-771.

Although none of these cases is directly on point, the Court finds that the two cases cited by LVJV are much more closely related to the instant challenge to jurisdiction, and they are therefore more persuasive.  Moreover, the Court finds that reference to the Tucker Act tilts the scales in favor of its exercise of jurisdiction.  The Tucker Act states that this Court possesses jurisdiction over "any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*."  28 U.S.C. § 1491(b)(1) (emphasis added).  The broad "in connection with" language of the Tucker Act clearly encompasses the agency actions here, both in that SOCOM requested confirmation of small business status from the SBA specifically for purposes of awarding a procurement contract and in that the SBA's determination had a direct effect on the outcome of that procurement.  The Court therefore may properly exercise jurisdiction over LVJV's complaint.

### b. The MPA Was Not Approved Until June 19, 2012

In its opening brief, LVJV puts forth the astounding argument that the relevant regulations are confusing, that they merely require that the "SBA" approve the MPA, and that, according to principles of statutory construction, the AA/BD's approval is not required to approve the MPA. In stating its case, LVJV directs the Court to 13 C.F.R. §124.520(d)(1)(i), which states that the "SBA must approve the mentor/protégé agreement before the two firms may submit an offer as a joint venture…" However, as both the Government and ITA point out, the regulation further states that "[t]he written agreement must be approved by the AA/BD." 13 C.F.R. § 124.520(e)(2). Only plain English is needed here: an MPA must be approved by the AA/BD.

LVJV attempts to inject further confusion into the issue by way of reference to the SBA's Standard Operating Procedures ("SOP"). In its brief, LVJV highlights the following provisions of the SOP in support of its position that the BOS may "approve" an MPA:

 a. After the BOS reviews the Agreement [MPA] and prepares a thorough evaluation and *recommendation*, which must include comments of District Counsel, the agreement is forwarded to the Assistant District Director for 8(a) BD (ADD/8(a) BD).
 b. If the ADD/8(a) BD *does not approve* the Mentor/Protégé Agreement, the process stops. The ADD/8(a) BD notifies both parties to the proposed Mentor-Protégé Agreement of the SBA's final decision at whatever point the process stops.
 c. If the ADD/8(a) BD *recommends* approval of the Agreement, he/she will forward the *recommendation* to the District Director.
 d. If the District Director agrees with the *approval recommendation,* he or she will forward the Agreement to the Office of Management and Technical Assistant in Headquarters.

SBA SOP 80 05 3, p. 187 (emphasis added). As pointed out by the Government, the SOP unequivocally does *not* authorize approval of the MPA by the BOS, the ADD/8(a) BD or the District Director. It merely grants them authority to *deny* an MPA or *recommend approval* to someone higher up in the chain of command. There is no need for reference to any canons of construction here beyond reference to the plain and ordinary meaning of the words in the regulation and SOP. LVJV's position is completely untenable.

### c. The AA/BD's Approval Does Not Serve As Ratification of the BOS's Statements

Next, LVJV argues that the AA/BD's final approval on June 19 amounts to a ratification of the BOS's "approval" on June 10. Specifically, LVJV argues that "[i]n government contracting, an unauthorized act can be adopted through ratification." *See*

LVJV Br. at 18 (quoting *Appeal of Nu-Way Concrete Co., Inc.*, CBCA No. 1411, 2011-1 BCA ¶ 34,636. Ratification "is the adoption of an unauthorized act resulting in the act being given effect as if originally authorized." *Appeal of Healthcare Practice Enhancement Network, Inc.*, No. VABCA-5864, 2001-1 BCA ¶ 31,383. Critically, "[r]atification requires knowledge of material facts involving the unauthorized act and approval of the activity borne with authority." *Appeal of Corners & Edges, Inc.*, ASBCA No. 55767, 2009-1 BCA ¶ 34,019.

Although the Government and ITA present various arguments regarding ratification, the Court thinks only one needs to be addressed to resolve the issue: there is no affirmative evidence in the AR that the AA/BD had "knowledge of material facts involving the unauthorized act" of the BOS's stated approval. At best, as LVJV asserts, the "AA/BD's final approval was based on the identical file that was in the SBA's possession when the BOS gave his mistaken approval notice." LVJV Br. at 19. This "file" was produced prior to the June 10 statement (LVJV was informed that the file had been sent to Washington by June 3), and the Court can discern no modification to the file before the AA/BD that would indicate that the BOS had informed LVJV that its MPA had been approved. In essence, LVJV asks the Court to ignore the evidence included in the AR and to instead impute knowledge of a low-level government official's actions to another government official several levels of authority above and several hundred miles distant from the original act. The Court declines to do so. Without affirmative evidence contained in the AR, the Court cannot conclude that the AA/BD had the requisite knowledge necessary to constitute ratification of the BOS's June 10 statement.

### d. Equitable Estoppel Does Not Apply

Next, LVJV asserts that the SBA is equitably estopped from denying timely approval of the MPA. According to LVJV, equitable estoppel requires a showing that: (1) the agency knows the true facts; (2) the agency intends or expects that its statements will be relied upon; (3) the contractor is ignorant of the true facts; and (4) the contractor relies upon the agency's conduct to its injury. LVJV Br. at 26 (citing *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000)). The parties dispute whether an equitable estoppel argument made against the Government requires "affirmative misconduct" as well. LVJV's argument is riddled with flaws.

First, the Court observes that, by its own admissions, LVJV was not ignorant of the true facts. According to the declaration of Garth Arevalo, the Chief Executive Officer of Lukos, LLC, which was filed at the OHA, Mr. Arevalo was informed on June 14, 2013, four days after the BOS's alleged approval and three days prior to the close of the Solicitation, "that there may have been a misunderstanding about the MPA approval in DC." AR Tab 18 at 189. According to Mr. Arevalo's declaration, he didn't receive an explanation of the misunderstanding, but rather than clarifying the issue, LVJV determined that "there was now no time left to prepare an alternate bid. Moreover, for all we knew, SBA might yet approve the MPA later that Friday or on the following Monday morning, June 17." *Id.* This statement paints a clear picture: LVJV knew, *before June 17*, that its MPA had not yet been approved, but it proceeded with its chosen course of

8

conduct despite the still-pending MPA approval. LVJV was absolutely not ignorant of the true facts, which renders its estoppel argument inapposite.

Second, it is clear that an equitable estoppel claim against the Government must include a showing of affirmative misconduct by the Government. Thus, in LVJV's reply brief, the Court was surprised to see the statement that "apart from the Federal Circuit's recent dicta, no federal appellate court has suggested, much less held, that affirmative misconduct is necessary to establish estoppel when the Government officials acted within the scope of their authority." LVJV Reply at 10.[1] Ironically, the "dicta" which LVJV claims irrelevant here is found in the very decision it cites for the estoppel standard: *Zacharin*. In *Zacharin*, the Federal Circuit stated that, "[w]hile the Supreme Court has not squarely held that affirmative misconduct is a prerequisite for invoking equitable estoppel against the Government, this court [the Federal Circuit] has done so, as has every other court of appeals." *Zacharin*, 213 F.3d at 1371 (citations omitted). The one-paragraph discussion that follows is premised entirely on the Circuit's conclusion that there was no evidence of affirmative misconduct in the case before it. To the extent that one could characterize the June 10 "approval" as affirmative misconduct, that misconduct was remedied by the June 14 phone call informing LVJV of the misunderstanding regarding approval of its MPA.

### e. General Principles of Equity Do Not Help LVJV

LVJV also contends that general principles of equity and fairness require the Court to find that its MPA was timely approved. Lukos Br. at 21-26. Most of its argument relies upon decisions by OHA which are not controlling here. For example, it points to *Cabrini Medical Center*, SBA No. SIZ-4610 (2004), which involved a statement by an SBA office that any appeal "must be postmarked no later than thirty (30) days after receipt of this letter." *Id.* The instruction was erroneous: the regulation required that an appeal be *received* within 30 days. OHA still accepted the appeal.

The issue here, as the Government observes, is that the MPA program is not tied to a specific procurement. Gov't Br. at 30. The SBA received and considered LVJV's MPA. LVJV apparently believes that the SBA should have accelerated consideration of its MPA in order for LVJV to submit a proposal on the Solicitation at issue here. Nothing in the cited authority indicates that the SBA is required to accelerate its consideration of a given MPA in order to satisfy a particular solicitation which the applicant intends to pursue.

The Court notes that the Government's argument can be taken a step or two further: in all of the SBA decisions cited by LVJV, the SBA applied equitable principles to modify its own timing rules. Here, it was SOCOM, not the SBA, who set the proposal

---

[1] Although further discussion on this point is unnecessary here, the Court has already found that the BOS had no authority to approve the MPA. Thus, any "approval" by the BOS is necessarily beyond the scope of the BOS's authority. This point of its own power removes this case from the authority of the various cases cited by LVJV on this issue.

9

deadline.  Further, substantive regulations, and not procedural ones, which require that an MPA be approved before the joint venture may submit offers on any government procurement, *see* 13 C.F.R. § 124.520(d)(1)(i), and that the MPA be approved by the AA/BD and not a lower-level SBA official.  *Id.* at § 124.520(e)(2).

In addition, the Court reiterates the point that LVJV was informed of the misunderstanding prior to submission of its proposal.  Even if the Court were inclined to balance the equities in this case, the fact that SBA informed LVJV of its erroneous June 10 "approval" tips the scales against LVJV.  In sum, nothing in LVJV's arguments gives the Court reason to apply general principles of equity to allow it to skirt the SBA's rules and regulations in order to award LVJV a contract for a Solicitation which it was not eligible to apply for until after the Solicitation was closed.

### f.   LVJV Is Not Entitled to Injunctive Relief

Because a permanent injunction requires that a plaintiff succeed on the merits, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004), and LVJV has failed on the merits, its request for permanent injunction is denied.

## IV.   Conclusion

As discussed above, the Court possesses jurisdiction over this action.  That said, LVJV has failed to present any combination of arguments and evidence that would render it successful on the merits.  Its reading of the relevant SBA regulations and the SOP are entirely contrary to the plain language of those authorities.  LVJV's argument on ratification is not supported by the evidence contained in the AR.  Its estoppel argument is in fact undermined by the evidence, and its appeal to general principles of equity fail for similar reasons.  Nothing in the AR demonstrates that the combined actions of the SBA and SOCOM lacked a rational basis or were otherwise in violation of regulation or procedure.

For these reasons, LVJV's motion for judgment on the administrative record is DENIED, the Government's cross-motion is GRANTED, and ITA's cross-motion is DENIED, as moot.  The Clerk is directed to mark this case closed and to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge